UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

STEVEN EDWARDS,            )
                           )
          Petitioner,      )
v.                         )      No. 1:06-cv-0535-SEB-VSS
                           )
STANLEY KNIGHT,            )
                           )
          Respondent.      )

**Entry Denying Petition for Writ of
Habeas Corpus and Directing Entry of Judgment**

The petition of Steven Edwards ("Edwards") for a writ of habeas corpus is **denied** and this action is **dismissed with prejudice.**

### I. *NATURE OF THE CASE*

Edwards seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### II. *PARTIES*

Edwards is an inmate in the custody of the Indiana Department of Correction. He is confined at the Pendleton Correctional Facility.

The respondent is Edwards' custodian, and in this action is sued in his official capacity only as representative of the State of Indiana.

### III. *PROCEDURAL BACKGROUND*

Edwards was convicted in an Indiana state court of conspiracy to commit murder. He was also found to be an habitual offender. His conviction was affirmed on appeal in Edwards v. State, 753 N.E.2d 618 (Ind. 2001)(*Edwards I*). His petition for post-conviction relief was affirmed on appeal in *Edwards v. State,* No. 49A02-0506-PC-496 (Ind.Ct.App. April 17, 2006)(*Edwards II*).

### IV. *STATEMENT OF FACTS*

The following statement of facts is taken from the decision of the Indiana Supreme Court in Edwards' direct appeal.

The facts most favorable to the verdict reveal that on the evening of December 20, 1998, seventeen-year-old Chris Harris went to the home of his aunt Tracie Brooks to change a light bulb. Appellant Steven Edwards, with whom Harris was living, accompanied Harris. While there, Edwards received a call and rushed Harris to leave, saying, "We better go kill this man, get this over with." (R. at 592-93.) Edwards and Harris then returned to Edwards' residence on Oakland Avenue in Indianapolis.

At the Oakland residence, Edwards hurriedly gathered together latex gloves, a rag, and a jacket. Shortly thereafter, James Alred and an unidentified man pulled up outside the residence in a Ford Taurus. They honked the horn, Edwards joined them in the car, and the three drove away. Alred, the driver of the car, had previously dealt in cocaine with Matthew Grady, the victim of the crime at issue in this case.

Shortly after 9:20 that evening, Grady returned home from Christmas shopping and received a page from Alred. Grady responded by calling Alred's cell phone around 10 p.m. After telling his wife he would be "right back," Grady left in a blue and silver pick-up truck.

At 11:34 p.m., the Indianapolis Fire Department received a report of a fire at North White River Parkway, West Drive. Firefighters and police officers responding to the scene discovered Grady's body on fire. Police found a pager and driver's license (both partially melted) next to the body, and $93 in Grady's pocket. Grady's truck and cell phone were not recovered at the scene.

An autopsy revealed that Grady had been hit on the forehead, causing bleeding in the brain. He had also been hit on the neck with enough force to crush his larynx. Although the autopsy did not show with certainty whether Grady was burned while alive or dead, burns covered more than 75 percent of his body. Grady died as a result of blunt force trauma to the head and neck and thermal injury from the fire.

Edwards returned to the Oakland residence not long after the police came upon Grady's body, around 2 a.m. on December 21st. He asked Harris to get him a plastic bag and bleach. He entered the bathroom, and subsequently re-emerged, handing Harris the plastic bag and asking him to take it to the dumpster without looking inside. As Harris took the bag to the dumpster, he observed that the bag contained Edwards' clothes and smelled of bleach. He returned to the house and talked with Edwards for a while. During their conversation, Edwards said that he would soon receive money from Alred.

Later on the 21st, Edwards complained to Harris that Alred had not yet brought him the money. The next day, Alred and another man came to the

> Oakland residence and gave Edwards $3000. Edwards and Harris then made phone calls, drove around for a few hours, and purchased $2700 worth of cocaine. During this time, Edwards told Harris that Alred and the other man were "some killers." (R. at 622.) He said that they had "whooped" some guy and "burnt" him. (R. at 622-23.) He then threatened to kill Harris if he "ran his mouth." (R. at 627.)
>
> Harris first talked to police about this case after his name appeared in a Crimestoppers advertisement following a newspaper article about the Grady murder. Harris' aunt took him to the police station. Harris did not want to talk, but after learning that police had some information implicating him in the crime, he gave a statement. Edwards was later arrested and charged with murder, conspiracy to commit murder, and criminal confinement.
>
> On the day Harris was to testify at trial, he told the prosecutor he was going to testify differently than he had previously testified under oath. He confirmed his intention to the trial judge, who advised Harris that he could be charged with perjury if his testimony differed from previous statements given under oath. Harris was then given an opportunity to speak with counsel in the presence of his grandmother.
>
> Called later as a witness, Harris gave testimony consistent with his earlier statements. Edwards' attorney questioned Harris about his announced intention to testify differently, and Harris admitted before the jury that he had considered changing his testimony.
>
> The jury found Edwards guilty of conspiracy to commit murder, but acquitted him of murder and criminal confinement. Edwards then pled guilty to the habitual offender charge. The court sentenced Edwards to forty years for conspiracy to commit murder plus thirty years for being an habitual offender. Edwards now brings this case on direct appeal.

*Edwards I,* 753 N.E.2d at 620-21. A footnote to the above summary notes: "During the autopsy a closed, but chainless, handcuff was discovered on each of Grady's wrists. A three-link chain was recovered near Grady's body at the scene."

## V. *EDWARDS' CLAIMS*

Edwards seeks federal habeas relief based on his claims that: 1) the evidence does not support his conviction; 2) the trial court committed misconduct by advising State's witness Harris that a change from his former sworn testimony could result in perjury charges; and 3) trial counsel was ineffective for failing to investigate and discover the nature of Harris' relationship with his grandmother, and to use it to impeach Harris' testimony.

## VI. *STANDARD OF REVIEW*

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). *See Conner v. McBride,* 375 F.3d 643, 649 (7th Cir. 2004).

Review of the habeas petition in this case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lambert v. McBride,* 365 F.3d 557, 561 (7th Cir. 2004). Under the AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent, or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d)(1), (2); *Early v. Packer,* 537 U.S. 3, 7-8 (2003); *Lambert,* 365 F.3d at 561.

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 125 S. Ct. 1432, 1438-39 (2005) (internal citations omitted). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)).

This deferential standard of § 2254(d)(1) only applies, however, to claims which the Indiana courts adjudicated on their merits. *Newell v. Hanks,* 283 F.3d 827, 838 (7th Cir. 2002) (citing cases). When AEDPA deference is not triggered, the court follows the statutory mandate of 28 U.S.C. § 2243 to "summarily hear and determine the facts, and dispose of the matter as law and justice require." *See Canaan v. McBride,* 395 F.3d 376, 383 (7th Cir. 2005).

## VII. *ANALYSIS*

*Sufficiency of the Evidence.* Prior to the AEDPA, a challenge to the sufficiency of the evidence was analyzed in a federal habeas proceeding by determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. A federal habeas court is not entitled to reweigh the evidence under the guise of assessing its sufficiency. *Jackson,* 443 U.S. at 319. On the contrary, a federal habeas corpus court must presume that the jury resolved all reasonable inferences in the State's favor. *Id.*, 443 U.S. at 326; *Willard v. Pearson,* 823 F.2d 1141, 1150 (7th Cir. 1987). The only appropriate inquiry for this Court under *Jackson*

4

> is whether, assuming the jury resolved all disputes in the state's favor and drew all inferences from that evidence, it would have been rational to convict. Not whether we would convict, but whether thoughtful people could convict.

*Branion v. Gramly,* 855 F.2d 1256, 1266 (7th Cir. 1988).

Edwards claims in his habeas petition that the evidence presented at trial was insufficient to support his conviction for conspiracy to commit murder. His specific contention regarding this claim is that no rational trier of fact could have found that an agreement to kill Grady existed or that there was an overt act in furtherance of an agreement. Edwards' argument rests on his view of the evidence, not on a view of the evidence that the jury resolved all disputes in the state's favor and drew all inferences from that evidence. As explained by the Indiana Supreme Court, an agreement between Edwards and Alred could be inferred from the evidence, and Edwards leaving in the car driven by Alred the night of the murder constituted an overt act in furtherance of the agreement. *Edwards I,* 753 N.E.2d at p. 621. The evidence at trial, viewed in a manner favorable to the state's theory, included a showing that (1) Edwards had returned to the Oakland residence shortly after police had discovered Grady's body, asked Harris to deposit his soiled clothing in a dumpster, and said he was soon to receive money from Alred, (2) Edwards also told Harris that Alred and the other man were "some killers," and that they had "whooped" some guy and "burnt" him, (3) Grady had been set on fire and killed by blunt force trauma. Additionally,

> Harris' testimony is not the only evidence supporting the verdict. The State offered testimony to establish that Grady and Alred had dealt together in cocaine, presented phone records indicating telephone calls and pages between Alred and Grady and Edwards the night of the murder, and showed that a pair of handcuffs was found on Grady's body, while testimony indicated that a pair was missing from Edwards' residence.

*Edwards I*, 753 N.E.2d at 624.

Edwards has not shown by clear and convincing evidence, nor by any evidence at all, that the above factual findings are not correct. The findings of fact are therefore accepted for the purpose of this proceeding, and no relief or re-determination of the facts is available to Edwards under § 2254(d)(2). See *Harding v. Walls,* 300 F.3d 824, 828 (7th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1) and explaining that courts refer to (e)(1) for the petitioner's burden of proof when that petitioner tries to make a (d)(2) showing of unreasonable state court factual determinations).

Under the *Jackson* standard, the evidence was sufficient to support Edwards' conviction. The Indiana Supreme Court's assessment of the sufficiency of the evidence provided Edwards and the State of Indiana with fair process and constituted reasoned, good-faith decision-making when applying *Jackson's* "no rational trier of fact" test. The determination by the Indiana Supreme Court that the evidence was sufficient thus did not run afoul of the AEDPA standard as expressed in 28 U.S.C. § 2254(d)(1), and hence Edwards is not entitled to relief based on this first claim.

5

*Judicial Misconduct.* Edward argues that the trial court deprived him of due process and a fair trial by advising State's witness Harris that a change from his former sworn testimony could result in perjury charges. This claim was first asserted by Edwards in his action for post-conviction relief. When considering the appeal from the denial of such relief, the Indiana Court of Appeals found this claim waived because it was available for direct appeal and was not raised at that stage. *Edwards II,* at p. 6.

The finding of waiver just described is a finding of procedural default. Such a finding limits the availability of federal relief, such that when procedural default has occurred, it can be overcome if a habeas petitioner "can demonstrate either (a) cause for the default and prejudice (*i.e.*, the errors worked to the petitioner's '*actual* and substantial disadvantage,'; or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.*, a claim of actual innocence)." *Conner v. McBride,* 375 F.3d at 649 (internal citations omitted). "Cause" for a procedural default exists if the petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice is demonstrated by showing that the errors worked to the petitioner's "actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Edwards filed a reply to the respondent's return to order to show cause. He argues in his reply that the finding of waiver was incorrect (or that he can show "cause" for not including the argument in *Edwards I*) because "information regarding the grandmother's abusive relationship was unknown to the defense" at trial or at the time of direct appeal. The Indiana Court of Appeals considered and rejected this rationale, explaining that Edwards had argued in his direct appeal that Harris' aborted attempt to change his testimony caused that testimony to fall within the "incredible dubiosity rule," and that, "[h]ad Edwards raised the [judicial misconduct] issue on direct appeal, he would have used the same evidence and arguments that he employed in his incredible dubiousity claim." *Edwards II,* at pp. 5 and 6. This observation correctly focuses on what Harris did–which was fully known to Edwards–rather than on why Harris may have done it, but it was Harris' conduct rather than his motive which could have provided support for the claim of judicial misconduct. Edwards' attempt to show cause for failing to include this claim in his direct appeal is unpersuasive.

Even if the court concluded otherwise regarding the presence of "cause" for Edwards' procedural default, there has been no showing of prejudice here. Specifically, the Indiana Court of Appeals found "no evidence" of coercion of Harris by his grandmother, *Edwards II,* at p. 8, and the trial court's dialogue with Harris on the subject of the possible change in his testimony did not cross the line of impropriety.

For both procedural and substantive reasons, therefore, Edwards is not entitled to relief based on his second claim.

*Effective Assistance of Counsel.* Edwards contends that he was denied the effective assistance of counsel at trial.

To support an ineffective assistance of counsel claim under *Strickland v. Washington,* 466 U.S. 668, 684 (1984), Edwards must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 695. A failure to establish either prong would result in a denial of Edwards' claim. *See Rastafari v. Anderson,* 278 F.3d 673, 688 (7th Cir. 2001). The first prong is satisfied by a showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States,* 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688). In evaluating whether counsel's performance was deficient, "the court must defer to counsel's tactical decisions," avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689. The prejudice prong of *Strickland* requires petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

A federal habeas court does not apply the principles of *Strickland* directly, but instead analyzes whether the state courts reasonably applied federal law. *See Conner v. McBride,* 375 F.3d 643, 657 (7th Cir. 2004). This review is "quite deferential,"and will not permit disturbing the state court's decision as long as it is objectively reasonable. *Barrow v. Uchtman,* 398 F.3d 597, 60 3 (7th Cir. 2005). "The state court decision is reasonable if it is 'minimally consistent with the facts and circumstances of the case.'" *Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir. 2002) (quoting *Schaff v. Snyder,* 190 F.3d 513, 522 (7th Cir. 1999)), *cert. denied*, 528 U.S. 1057 (2003).

The Indiana Court of Appeals properly identified the two applicable prongs under *Strickland*, see *Edwards II,* at pp. 6-7. In then applying the *Strickland* standard, the Indiana Court of Appeals did not apply that standard in a manner contrary to the holdings of the United States Supreme Court, nor did its analysis constitute an objectively unreasonable application of *Strickland's* standard requiring both deficient performance and prejudice. There was no deficient performance of counsel under these circumstances. *Hough v. Anderson,* 272 F.3d 878, 898 n.8 (7th Cir. 2001) ("It is not deficient performance to fail to raise an argument with no real chance of success."). It has been noted that "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus," *Holman v. Gilmore,* 126 F.3d 876, 882 (7th Cir. 1997). While such errors do occur, *e,g.,* *Brown v. Sternes,* 304 F.3d 677 (7th Cir. 2002); *Roche v. Davis*, 291 F.3d 473, 483-84 (7th Cir. 2002), no such error occurred in Edwards' case.

## VIII.  *CONCLUSION*

Edwards' prosecution, trial, conviction, and sentencing have received exhaustive review, both in this action for habeas corpus relief and in the Indiana state courts. This court has carefully reviewed the state record in light of Whitney's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. "A defendant whose position depends on anything other than a

straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir. 1997). No such established rules entitle Lewis to relief in this case. Accordingly, his petition for a writ of habeas corpus must be **denied** and this cause of action **dismissed with prejudice.** Judgment consistent with this Entry shall now issue.

      **IT IS SO ORDERED.**

Date: 08/30/2006

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana